UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSHUA ORGERON ET AL. | * | CIVIL ACTION NO. 23-4349 |
| | * | |
| VERSUS | * | SECTION: "A"(3) |
| | * | |
| MIC GENERAL INSURANCE | * | JUDGE JAY C. ZAINEY |
| CORPORATION ET AL. | * | |
| | * | MAGISTRATE JUDGE EVA J. DOSSIER |
| | * | |
| | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ORDER AND REASONS**

The following motions are before the Court: **Motion to Dismiss for Failure to State a
Claim (Rec. Doc. 36)**, filed by Defendant, MIC General Insurance Corporation,[1] and **Motion to
Dismiss for Failure to State a Claim (Rec. Doc. 47)**, filed by Defendant, Freedom Mortgage
Corporation. Plaintiffs, Joshua and Maura Orgeron, oppose both motions. The motions,
submitted for consideration on April 24, 2024, and May 8, 2024, respectively, are before the
Court on the briefs without oral argument. For the reasons that follow, MIC's motion to dismiss
(Rec. Doc. 36) is **GRANTED IN PART AND DENIED IN PART** and Freedom's motion to
dismiss (Rec. Doc. 47) is **GRANTED IN PART AND DENIED IN PART**.[2]

**I.      Background**

The plaintiffs, Joshua and Maura Orgeron, own property at 318 Karen Drive in Lockport,
Louisiana. (First Supplemental and Amending Complaint for Damages, Rec. Doc. 30, ¶ 6). The
property is subject to a mortgage serviced by Freedom and is protected by an insurance policy
issued by MIC. (*See* Rec. Docs. 47-2 & 36-3). The policy lists Freedom as the named insured

---

[1] This motion was joined by Amerihome Mortgage Company, LLC. (Rec. Doc. 43).
[2] Although Amerihome joined MIC's motion to dismiss, the success of the motion as it relates to MIC does
not extend to Amerihome, as discussed below.

and has covered the property since March 15, 2021. (Rec. Doc. 36-3, at 1). The plaintiffs allege that MIC's policy was provided "to Plaintiff[s]" and that the policy covers the property and its contents against perils including hurricanes, wind, hail, and/or water damage. (Rec. Doc. 30, ¶ 7). In late August of 2021, Hurricane Ida struck Louisiana, causing water to enter the dwelling and damaging the property. (*Id.* ¶ 9).

The plaintiffs allege that following Ida, they reported all relevant damage to MIC, which inspected the property and provided an estimate. (*Id.* ¶ 12). The plaintiffs contend that this estimate was a gross underrepresentation of the true damages. (*Id.* ¶ 12-13). The plaintiffs subsequently secured an expert report documenting the damage to the property, but allege that MIC refused to increase its estimate. (*Id.* ¶¶ 17-20). Accordingly, the Orgerons brought this suit, initially against MIC for breach of insurance contract and bad faith, in the 17th Judicial District Court for the Parish of Lafourche. (Rec. Doc. 1, ¶ 1). MIC removed the case to this Court (Rec. Doc. 1) and ultimately moved to dismiss the suit, arguing that the Orgerons were not named insureds under the policy and therefore lacked standing to enforce the policy. (Rec. Doc. 12). In response, the Court granted the plaintiffs leave to amend their complaint (Rec. Doc. 29), at which point they joined two new defendants: their previous mortgagee, Amerihome, and their current mortgagee, Freedom, and added several allegations. (Rec. Doc. 30).

The amended complaint also asserted new claims, including that the defendants, "working in concert and as an enterprise," failed to recover or attempt to recover insurance proceeds or to repair the property; failed to assign the rights in the insurance contract to the plaintiffs; failed to recognize the plaintiffs as named insureds; willfully placed the policy with MIC while passing the cost to the plaintiffs; and failed to pursue protection of the property. (*Id.* ¶ 32). They further allege that the defendants failed to transfer the plaintiffs' escrow account,

2

managed by Amerihome, upon the assignment of the note to Freedom. (*Id.* ¶ 33). They contend that the defendants have violated the Louisiana Unfair Trade Practices Act, and have requested damages for breach of the mortgage contract.

In response, MIC re-urged its motion to dismiss (Rec. Doc. 36), and Amerihome filed a notice of joinder in the motion. (Rec. Doc. 43). The MIC motion argues that the Orgerons are not named insureds under the insurance contract, and that the LUTPA claim is statutorily barred. Freedom then filed a motion to dismiss under Rule 12(b)(6). (Rec. Doc. 47). Freedom's motion focuses on the mortgage contract's insurance and escrow provisions, asserting that it did not breach the mortgage contract, and argues that the LUTPA claims are barred by statute. Both motions request dismissal of all claims. The Court discusses these motions below.

## II.    Legal Standard

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679)).

In the context of a motion to dismiss, the district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v.*

*US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995)).

### III.   Discussion

#### 1.   Breach of Insurance Contract

In response to the plaintiffs' amended complaint, MIC has moved to dismiss all counts, arguing that the plaintiffs are not named insureds and therefore lack standing to sue under the contract. When deciding a Rule 12(b)(6) motion to dismiss, the Court may consider attachments which are incorporated by reference in the complaint and central to the claim at issue. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Here, the insurance policy is incorporated by reference in the complaint and is directly related to the plaintiffs' claims for breach of contract and bad faith; thus, the Court will consider it in determining whether there is a valid claim.

To state a claim under an insurance policy, a plaintiff must be a named insured or additional named insured; if he or she is not, he or she may only recover as an intended third-party beneficiary of the policy. *Brown v. American Modern Home Insurance Company*, No. 16-16289, 2017 WL 2290268, at *4 (E.D. La. 2017) (citing *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 47 (5th Cir. 2010)); *Joseph v. Hosp. Serv. Dist. No. 2 of*

*Par. of St. Mary*, 939 So. 2d 1206, 1211 (La. 10/15/06); La. Civ. Code art. 1978. The insurance policy at issue only lists Freedom Mortgage Corporation as a named insured. (Rec. Doc. 36-3, at 1). The plaintiffs cite to a certificate from MIC, entitled "Evidence of Lender-Placed Hazard Insurance," which refers to Joshua Orgeron as a borrower, to show that the plaintiffs are contemplated by the contract. However, crucially, the certificate does not list either plaintiff as a named or additional insured. (Rec. Doc. 36-2). Therefore, under the policy's terms, Orgeron is not an insured. Accordingly, to successfully state a claim under the contract, the plaintiffs must be third-party beneficiaries under Louisiana law.

In Louisiana, a contract that intentionally provides benefits to a third party is referred to as a "stipulation *pour autrui*." *See Joseph*, 939 So. 2d at 1212. Such a stipulation is never to be presumed; instead, the party claiming the benefit bears the burden of showing that such a relationship exists. *Id.* The Supreme Court of Louisiana in *Joseph* provided a three-part test to determine whether such a stipulation exists: (1) the contract must manifest a clear intention to benefit a third party; (2) there must be certainty of the benefit provided to that third party; and (3) the benefit is not merely incidental of the contract between the two parties. *Id.* If any of these three elements is not met, then there is no stipulation *pour autrui*.

As an initial matter, the plaintiffs failed to allege that a stipulation *pour autrui* exists, despite being granted leave to amend their complaint to incorporate such allegations. Instead, the complaint routinely claims that the plaintiffs are parties to the insurance contract, despite the policy's clear language to the contrary. (Rec. Doc. 30, ¶¶ 7, 29). As stated above, stipulations *pour autrui* are never presumed, and the plaintiffs bear the burden of proving that one exists. Nevertheless, this Court will examine the contract under the *Joseph* framework in considering whether the plaintiffs qualify as third-party beneficiaries.

The insurance contract at issue is a force-placed policy protecting Freedom's interest in the subject property. Such a policy "insures the lender's collateral when the borrower fails to maintain a specific type of insurance." *Williams*, 398 F. App'x at 46. The lender may protect its exposure up to the amount of the mortgage on the date of issuance under such a policy. *Id.* Although the cost of such premiums may be passed to the mortgagor, the policy is typically held in the interest of and for the benefit of the lender. Indeed, the mere fact that a borrower pays a premium does not create a legal relationship between the borrower and the insurer. *Kilson v. Am. Road Ins. Co.*, 345 So. 2d 967, 969 (La. Ct. App. 1977).

The plaintiffs also claim that they are third-party beneficiaries because, in the event of a loss, they are duty-bound to produce proof of such loss to MIC under the contract. When presented with such arguments, other courts in the Eastern District have found that obligations placed on borrowers by a policy do not transform the borrowers into third-party beneficiaries. "The obligations placed on plaintiffs do not manifest a clear intention to provide a certain benefit to plaintiffs that is more than incidental to the contract between the insurers and [the lender]." *Brown*, 2017 WL 2290268, at *5 (citing *Graphia v. Balboa Ins. Co.*, 517 F. Supp. 2d 857, 858 (E.D. La. 2007)). Because the borrowers' premium payments and obligations under the contract do not create a clear manifestation that they are third-party beneficiaries, the contract must otherwise exhibit a manifestation under the *Joseph* test to show that a stipulation *pour autrui* exists.

The policy states that the terms "you" and "your" throughout the contract "refer to the financial institution shown" on the named insured line—in this case, Freedom. (Rec. Doc. 36-3, at 8). The contract's "loss payable" clause states only that "[l]oss, if any, shall be made payable to *you* as *your* interest appears." (*Id.* (emphasis added)). There is no mention in the loss payable

6

provision of the mortgagors' rights in the event of a loss. (*Id.*). In response, the plaintiffs point this Court to *Brown* to suggest that where the loss payable exceeds the amount due on the mortgage, that remainder shall be paid out to the mortgagor, therefore granting them third-party beneficiary status. However, the plaintiffs overlook that in both *Brown* and other cases holding the same, such as *D'Juve v. American Modern Home Insurance Co.*, No. 14-2386, 2015 WL 1650259 (E.D. La. April 14, 2015)), the policies at issue each included a provision stating that "any benefits due which are in excess of your interest in the property [shall] be paid to the mortgagor." *Brown*, 2017 WL 2290268, at *5 (noting that "nearly identical" language appeared in *D'Juve*). Other opinions from the Eastern District have come to the same conclusion where policy language is sufficiently similar. *Tardo v. Integon Nat'l Ins. Co.*, No. 23-296, 2023 WL 2757088, at *3-4 (E.D. La. April 3, 2023). However, no similar language appears anywhere in the policy between MIC and Freedom.[3] Consequently, any argument that the loss amount exceeds Freedom's interest in the property fails.

In *Brown*, the sole benefit that created a stipulation *pour autrui* was "triggered when the loss payment exceed[ed] [the lender's] interest in the property." *Id.* Because no such language benefiting the mortgagor appears in the Freedom-MIC insurance contract, there must be some other manifestation for the plaintiffs' claim to stand. A review of the policy shows that no such manifestation exists. The policy only mentions the mortgagors to outline their duties in the event of a loss, which, as described above, is insufficient to qualify as a manifestation of intent to benefit a third party. In fact, the policy makes guarantees to Freedom regarding its interest, including that its interest in the property may not be impaired by any act of the mortgagors so

---

[3] Even if such contractual language were not required to show a manifestation of intent to benefit the third party and such disbursements were required as a matter of law, there are no allegations in the amended complaint to suggest that the insurance proceeds exceed the amount due under the mortgage.

long as Freedom satisfies two conditions: notification of change in ownership of the property and timely payment of all premiums. (Rec. Doc. 36-3, at 11). Further, the policy directly discusses Freedom's interest if MIC "pay[s] you for any loss and [does] not pay the mortgagor." (*Id.*). In such an event, MIC becomes subrogated to all rights to Freedom and may require a partial assignment of the mortgage, or may pay the whole principal and any accrued interest and receive full assignment. (*Id.*). These provisions suggest that no payout to the mortgagors is necessary and that the policy is not intended to benefit the mortgagors.

In fact, any payout stemming from the contract—namely payouts in the event of a covered loss—are provided for Freedom's benefit. Any benefits the plaintiffs receive from these disbursements are merely incidental. The policy is strictly designed to protect Freedom's interest in the Lockport property in the event of a hurricane because the plaintiffs failed to maintain—or failed to prove that they maintained—an adequate policy.[4]

Under the applicable law and the contract, the plaintiffs are not third-party beneficiaries of the insurance contract. Therefore, because they are not named insureds, additional insureds, or third-party beneficiaries, they have failed to state a claim and MIC's motion to dismiss is **GRANTED** as to the breach of insurance contract claim.

A party must be able to state a claim for breach of insurance contract to sustain a claim for bad faith as against insurers. *See Barbe v. Ocwen Loan Servicing, LLC*, 383 F. Supp. 3d 634, 643 (E.D. La. 2019). Because this Court has found that the plaintiffs failed to state a claim against the insurer for breach of the insurance policy, the bad faith claims must also fail as a matter of law. Therefore, the motion to dismiss is **GRANTED** as to the bad faith claims.

---

[4] The Orgerons claim that the mortgagees failed to maintain their policy through their escrow account. This is of no consequence to MIC, which is merely cooperating with the terms of its insurance policy with Freedom.

2. *Breach of Mortgage Contract*

The amended complaint also brings a breach of mortgage contract claim against Freedom and Amerihome, claiming that they failed to timely recover or attempt to recover insurance proceeds from MIC; failed to timely and willfully assign the rights in the insurance contract; failed to recognize the plaintiffs as named insureds; willfully placed the policy with MIC and passed the cost to the plaintiffs; and failed to pursue the protection of the property after Ida. (Rec. Doc. 30, ¶ 38). The Orgerons also assert that the defendant lenders failed to collect, recover, and/or transfer their escrow account upon transfer of the mortgage note. (*Id.* ¶ 39). Freedom has moved to dismiss this cause of action, arguing that the mortgage contract permits the company to seek additional hazard insurance in the event that the plaintiffs fail to maintain their policy, and that there was no contractual duty under the mortgage contract compelling it to secure funds for their benefit.

The plaintiffs' claims fail as they relate to the mortgage contract's insurance proceeds provisions. Freedom correctly points out that nothing in the mortgage contract requires that Freedom secure insurance for the benefit of the plaintiffs, that they assign the rights of the insurance contract to the plaintiffs, or that they otherwise pursue protection of the property on the plaintiffs' behalf. Section 5 of the mortgage contract governs property insurance, and reads as follows:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

(Rec. Doc. 47-2, at 6). This excerpt of the policy makes several things clear. If the plaintiffs fail to maintain insurance coverage, Freedom has a right to insure the property. Any insurance policy Freedom secures pursuant to this provision need not benefit the Orgerons, and Freedom may pass the cost of the insurance premiums to the Orgerons. Further, the policy's coverage limits may vary widely from what the borrowers would select. Freedom has a right to force-place a policy that provides no specific interest or guarantee to the plaintiffs, and Freedom was under no contractual duty by way of the mortgage to provide insurance funds to the plaintiffs themselves. Additionally, Freedom had no duty to assign the rights under the contract to the plaintiffs.

This leaves the question of the escrow account. The plaintiffs' complaint only makes note of one insurance policy, which it refers to as "Policy Number PTM0030000154882." (Rec. Doc. 30, ¶ 7). In that same allegation, they state that this policy existed between them and MIC. However, the policy number to which the plaintiffs refer is merely the certificate number provided by MIC to identify the document entitled "Evidence of *Lender-Placed* Hazard Insurance." (Rec. Doc. 47-2, at 1 (emphasis added)). Nowhere else in the complaint do the plaintiffs discuss another insurance policy. Instead, they assert that during the transfer of the mortgage note from Amerihome to Freedom, there was a failure to collect, recover, or transfer the escrow account to Freedom, thus allowing their previous policy to lapse. (Rec. Doc. 30, ¶ 39). The contract provides in Section 3 that an escrow account will be used to pay certain premiums. Where there is a surplus or payment of all sums, the remaining funds in the escrow account are to be credited to the borrower. Further, in the event of a transfer of the note to another lender under Section 19 of the contract, payment must be made to the new loan servicer. Clearly, in the event of a note transfer, the initial lender must either transfer the escrow account to the new lender, or must provide what remains in the escrow account to the borrowers upon the date of effective transfer of the note.

In this Court's view, the plaintiffs have sufficiently alleged that there was a failure to properly transfer the escrow account. This is all that is necessary at this stage. The Court notes that the parties have provided substantial documentation in support of their positions. However, it is inappropriate to consider extraneous evidence in determining whether the claim shall be dismissed under Rule 12(b)(6). Even assuming this Court can and should review the evidence, any suggestion by the provided statements that a transfer occurred fails to demonstrate that the transfer actually reached Freedom or reimbursed the Orgerons. At this stage, the plaintiffs have alleged sufficient facts to sustain a claim for breach of contract by asserting that a transfer was not correctly made, thus allowing Freedom to force-place a policy.

Because no contractual provisions in the mortgage agreement were sufficiently alleged to have been violated by Freedom, the motion to dismiss is **DENIED** as to the breach of contract claim.

*3. LUTPA*

The final issue raised in both motions to dismiss is whether the plaintiffs sufficiently stated a claim under the Louisiana Unfair Trade Practices Act. As against MIC, the plaintiffs appear to claim that it knew or should have known of the insurance coverage through an escrow account previously held by Amerihome, and that it intentionally failed to seek the funds in the escrow account.[5] (Rec. Doc. 30, ¶ 34). As to Amerihome and Freedom, the plaintiffs claim that they failed to seek or transfer the escrow account, which permitted Freedom to force-place a policy with MIC. (*Id.* ¶ 40). The plaintiffs suggest that these actions were taken "to charge Plaintiff out of market fees and premiums when Defendants knew or should have known [that] Plaintiff had insurance

---

[5] The complaint is unclear as to whether it is asserted against MIC. Reading the complaint liberally, the Court will apply the claim to MIC.

coverage through an escrow account which was held by Plaintiff's prior mortgage lender." (*Id.* ¶ 39).

MIC asserts that the plaintiffs cannot sustain a LUTPA claim because the act specifically excludes insurers; indeed, it contends that it is squarely within the jurisdictional scope of the state's insurance commissioner. By its own terms, LUTPA does not apply to "actions or transactions subject to the jurisdiction of . . . the insurance commissioner." LA. STAT. ANN. § 51:1406(1). Additionally, LA. STAT. ANN. § 22:1967 states that the commissioner can investigate the affairs of all persons engaged in the insurance business, which, of course, includes MIC's insurance activity. The plain language bars unfair trade practice claims against insurance companies, and therefore the LUTPA clams are dismissed to the extent they are asserted against MIC.

Beyond the simple language of the statute, case law supports this result. As discussed by the Louisiana Third Circuit, LA. STAT. ANN. § 22:1964 "defines the methods, acts, and practices which are considered unfair and deceptive by the Insurance Code." *S. Gen. Agency, Inc. v. Safeway Ins. Co. of La.*, 769 So. 2d 606, 608 (La. App. 3 Cir. 6/7/00). Accordingly, the Third Circuit found that a claim against an insurer for "unfair trade practices is specifically exempt from the Unfair Trade Practices and Consumer Protection Law by La. R.S. 51:1406." *Id.* at 608-09. Other sections of this District have held the same regarding LUTPA claims. *See, e.g.*, *Cougle v. Berkshire Life Ins. Co. of America*, 429 F. Supp. 3d 208, 219 (E.D. La. 2019); *McCarthy v. United Prop. & Cas. Ins. Co.*, No. 22-5262, 2023 WL 183911, at *2 (E.D. La. Jan. 13, 2023). Considering the above, the LUTPA claim cannot be sustained against MIC.

The LUTPA claims asserted against Freedom suffer a similar fate. The same statutory provision that excludes insurance companies from LUTPA's scope also notes that it does not apply to any licensee of the Office of Financial Institutions or the financial institutions and insurance

regulators of other states. LA. STAT. ANN. § 51:1406. Freedom has proved to this Court that it is a licensee of the Louisiana Office of Financial Institutions.[6] Other courts in this District have found the same. *See, e.g.*, *Suffern v. Countrywide Home Loans, Inc.*, No. 06-0358, 2006 WL 1999204, at *2 (E.D. La. July 14, 2006) ("The Court finds that Countrywide is subject to the jurisdiction of the commissioner of financial institutions. Therefore, it is exempt from the provisions of the LUTPA." (citing *Daigle v. Trinity United Mortgage, L.L.C.*, 890 So. 2d 583, 590 (La. App. 3 Cir. 11/10/04))). Considering the foregoing, this Court is satisfied that LUTPA does not apply to Freedom under these circumstances.[7]

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 36)** filed by Defendant, MIC General Insurance Corporation, is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as it applies to MIC, and all claims stated against MIC are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as it applies to Amerihome.

---

[6] While this Court is bound to the pleadings under a Rule 12(b)(6) motion and only that evidence which is incorporated by reference therein, courts may take judicial notice of government websites. *See Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (taking judicial notice of a Texas agency website). Because courts may rely on "matters of which a court may take judicial notice" in determining a Rule 12(b)(6) motion to dismiss, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 551 U.S. 308, 322 (2007), Freedom's evidence, which is located on a Louisiana government website, may be considered.

[7] While both Freedom and MIC argued and demonstrated that they are excepted from the scope of LUTPA, Amerihome has made no such showing. Therefore, the LUTPA claim may only be dismissed against Amerihome if the plaintiffs failed to state a claim. Here, the pleadings allege that the lender defendants colluded and intentionally failed to transfer escrow funds so they could charge the plaintiffs out-of-market fees and premiums. This is sufficient to state a claim under the 12(b)(6) standard. This Order makes no ruling about whether Amerihome falls within LUTPA's sweeping exceptions. Having no proof that Amerihome is excepted, and finding that the plaintiffs sufficiently stated a claim under LUTPA, the LUTPA claim against Amerihome survives this motion to dismiss.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss (Rec. Doc. 47)** filed by Defendant, Freedom Mortgage Corporation, is **GRANTED IN PART AND DENIED IN PART**, as described above.

May 29, 2024

_____

JAY C. ZAINEY, UNITED STATES DISTRICT JUDGE